UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL M. COTTON,

                Plaintiff,

    v.                                    Case No. 24-cv-1032-pp

DENITA BALL, *et al.*,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTIONS TO SUBPOENA DISCOVERY (DKT. NOS. 7, 10), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 16) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Michael M. Cotton, who is incarcerated at the Milwaukee Secure Detention Facility and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1. It also resolves the plaintiff's motions to subpoena discovery, dkt. nos. 7, 10, and his motion to appoint counsel, dkt. no. 16.

## I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 19, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $2.50. Dkt. No. 6. The court received that fee on November 13, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II.     Screening the Complaint

### A.      Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

2

plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff sues Milwaukee County Sheriff Denita Ball, Officer Bailey, Officer Howard and "other 3rd shift staff on date of 5-21-24." Dkt. No. 1 at 1. He states that on May 21 and 22, 2024, between the hours of 7 p.m. and 5 a.m., the Milwaukee County Jail and its booking staff violated his constitutional rights, particularly his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to equal protection of the law. Id. at 2.

The plaintiff alleges that on May 21, 2024, he turned himself in at the jail because he had just obtained his "cdl" (presumably, commercial driver's license) and needed to clear his name to get a job. Id. at 2-3. He says he decided to "come here" because he was nearby and "it avoided the district wait." Id. at 3. The plaintiff states that when someone asked him about his child, he "felt strange and soon regretted it." Id. As the plaintiff allegedly was

walked from booking to a cell, he heard an officer yell "I run this[]" and other officers chanted "the camera down now." Id. Another officer allegedly said, "we closed to the public now[]" and then one asked, "ya'll let them fight like the rest of them." Id.

The plaintiff alleges that once he was placed in a cell, it then was filled with six individuals, and he was again asked about his child. Id. He states that he responded that he didn't know what they were talking about, and they made a comment about jumping him. Id. After another person allegedly entered the cell with something he didn't see, "maybe drugs or a weapon," the plaintiff asked to go to another cell to use the bathroom; he says that he splashed water on his face and told defendant Officer Bailey, "OK send them in by the ones[.]" Id. Bailey allegedly said "there would be no one on ones" and Bailey returned the plaintiff to a cell and there was a guy laying down and two other guys were talking about just having had sex with him. Id. at 3-4. The plaintiff states that he went to take a drink, and they started laughing and asked the plaintiff if the water tasted funny. Id. at 4. The plaintiff says that a detained person named Banks tapped the other guy on the shoulder and said "as soon as he fall's [sic] asleep." Id. The plaintiff alleges that he started to feel "the effects;" he says that the cell cleaners came so "they" brought "us" out and the plaintiff sat on the middle bench. Id. The plaintiff states that he tried to stay awake and then Officer Bailey was taking them back to the cell and the plaintiff was really feeling the effects. Id. He allegedly asked Bailey to be put in a cell he noticed was empty because he felt secure in a locked cell; he says he then passed out. Id.

The plaintiff alleges that when he woke up his anus was sore, and he felt groggy and noticed feces on the floor and "put two and two together and begun

4

to pound on the door as the shutter was closed on booking side." Id. The plaintiff says that he heard voices through a crack, and saw an officer with a name tag reading "Howard" come and ignore the plaintiff with a smart remark. Id. The plaintiff says that he looked on the court staging side and saw people leave toward the elevator; he says he pounded only to be ignored. Id. He says he doesn't know what time it was, but that he "beat on the other side" until an officer came and when the plaintiff threatened to report them and sue, that officer slammed the door. Id. The plaintiff alleges that because he was groggy, he sat down and dozed off and when he woke up, he was being taken from the cell and asked who he was. Id. The plaintiff states that he was still groggy from "sleep and the drug," and that he couldn't remember, but when he did, he stated his name. Id. at 4-5. The plaintiff says he thought this was strange because he'd turned himself in with a photo I.D. Id. at 5. He says that he was booked, and that in his photo he "looked to be pretty ruffed [sic] up." Id. He was "brought oranges no sock and place into 4D." Id. The plaintiff alleges that "they" ignored his pleas for a rape kit and to run "labs." Id. He states that he was put there feeling violated and defeated and that he laid there for days. Id. He says that he was "being threaten[ed] through vents" until his "p.o." allegedly came to take his statement and he told her someone was trying to kill him. Id. The plaintiff alleges that the P.O. shrugged; he says he is sure that he was monitored by staff as to what he would say. Id. The plaintiff says he was then moved to "4A" and was allowed to shower and use the bathroom. Id. He asserts that he was "locked in the cell only one with keys was C.O.'s?" Id.

The plaintiff alleges that he was afraid to file a grievance while at the jail for fear of retaliation, but that when he got out, he gave a copy of his complaint to his public defender. Id. He said that he also posted a note to his shift officer

5

"stating a prea situation Sgt. Williams who, brought me out 3rd shift no com or anything fishing for information." Id. The plaintiff reiterates that he made a PREA grievance request for an investigation. Id. The plaintiff says that someone changed his booking date to hide evidence, and he alleges that there is a lot of corruption. Id. at 6. He also alleged that "[t]hey are also den[y]ing access to federal mail to help cover corruption!!!" Id.

The plaintiff seeks monetary damages and injunctive relief. Id. at 7.

C.    Analysis

Wisconsin online court records show that the plaintiff was a pretrial detainee on May 21 and 22, 2024, during the events described in the complaint. Those records show that an arrest warrant was issued for the plaintiff on July 31, 2023, he was in custody on May 25, 2024 and he pled guilty to two counts of disorderly conduct on September 23, 2024. See wcca.wicourts.gov (last visited Feb. 22, 2025).

The plaintiff appears to allege that jail staff failed to protect him from being drugged and sexually assaulted at the jail. To state a viable failure-to-protect claim under the Fourteenth Amendment, a pretrial detainee must allege: (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries. Thomas v. Dart, 39 F.4th 835, 841 (7th Cir. 2022) (citing Kemp v. Fulton County, 27 F.4th 491, 494 (7th Cir. 2022)).

6

Construed liberally, the plaintiff states a failure-to-protect claim against the jail officers for allegedly allowing him to be drugged and sexually assaulted. He may proceed against defendants Bailey, Howard and unknown third shift officers who were allegedly working that night. The plaintiff may not proceed against Milwaukee County Sheriff Denita Ball because he has not included any allegations against her. The court will dismiss defendant Ball. The defendant mentions Lt. Tyler and Lt. Hollowmann on page 6 of his complaint, but makes no specific allegations against them other than saying that Tyler lied (with no explanation of what that lie might have been). The plaintiff did not name these individuals as defendants and he may not proceed against them because he has made no specific allegations against them.

Once the named defendants have answered the complaint, the plaintiff will need to use discovery to discover the names of the Doe defendants.

### III. Plaintiff's Motions to Subpoena Discovery (Dkt. Nos. 7, 10)

The plaintiff has filed two motions to subpoena discovery, requesting that the jail disclose video evidence, logs and other information related to his claims. Dkt. Nos. 7, 10. The discovery phase of a case does not begin until *after* the defendants have answered the complaint. After the defendants file their answers, the court will issue a scheduling order setting deadlines for the parties to complete all discovery and to file dispositive motions. ***The parties must not demand discovery from each other until AFTER the court has issued the scheduling order.*** The scheduling order will include more information about discovery. During discovery, the parties exchange information about the case. When the discovery phase begins, the plaintiff may submit his discovery request to the lawyer for the defendants. The court should not be involved in discovery unless, after trying to work it through themselves,

7

the parties cannot resolve a discovery-related disagreement on their own. If that happens, either party may file a motion to compel under Federal Rule of Civil Procedure 37(a). But before filing a motion to compel, a party must try to resolve the discovery dispute with the other side and a motion to compel must describe the efforts the party taken to try to resolve the issue without court involvement. Fed. R. Civ. P. 37(a)(1).

Because the plaintiff inappropriately submitted his discovery requests to the court, and because he did so prematurely (before the court had screened the complaint and before the defendants had answered), the court will deny his motions for discovery.

## IV.    Plaintiff's Motion to Appoint Counsel (Dkt. No. 16)

The plaintiff has filed a letter requesting the court's assistance in appointment of counsel. Dkt. No. 16. In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-

8

55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the

case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." <u>Pickett</u>, 930 F.3d at 871.

The plaintiff has not satisfied the threshold requirement for appointment of counsel because he does not say that he tried to find a lawyer on his own. To satisfy that requirement, the plaintiff must follow the steps described above. The court will deny without prejudice the plaintiff's motion to appoint counsel. That means that if and when the plaintiff provides the court with proof that he has contacted at least three lawyers without finding someone to represent him, he may file another motion asking the court to appoint him a lawyer. That does not mean that the court will grant that motion; it means only that he may file another motion once he has done what the court requires.

## V. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motions to subpoena discovery. Dkt. Nos. 7, 10.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 16.

The court **DISMISSES** defendant Denita Ball.

Under an informal service agreement between Milwaukee County and this court, the court will electronically transmit a copy of the complaint and this order to Milwaukee County for service on defendants Officer Bailey and Officer Howard. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$347.50** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at the Milwaukee Secure Detention Facility, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 10th day of March, 2025.

BY THE COURT:

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**